# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Joan H. Lefkow | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 2410 | **DATE** | 5/1/2003 |
| **CASE TITLE** | Massey, et al. vs. International Brotherhood of Teamsters, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Plaintiff's emergency motion for a restraining order [2-1] and/or a preliminary injunction [2-2] is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 2 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | **MAY 0 5 2003** date docketed | |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | U.S. DISTRICT COURT | | 10 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | 03 MAY -2 PM 12:19 | 5/1/2003 date mailed notice | |
| MD | courtroom deputy's initials | FILED | MD mailing deputy initials | |
| | | Date/time received in central Clerk's Office | | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALBERT MASSEY, ROY DENNIS, ) <br> LORETTA BYRD, ARMANDO FOSCO, as ) <br> Executive Board Members, as well as on behalf ) <br> of themselves and all similarly situated ) <br> Members, of LOCAL 738 Grocery & Frozen ) <br> Food Products, Processors, Canneries ) <br> Frozen Food Plants, Sugar Processors, ) <br> Confectionary & Candy Manufacturers & ) <br> Distributors, Coffee Vending, Miscellaneous ) <br> Drivers & Salesmen, Warehouseman & Related ) <br> Office Employees Union, and TEAMSTERS ) <br> LOCAL 738, ) <br> ) <br> Plaintiffs, ) <br> ) <br> vs. ) <br> ) <br> INTERNATIONAL BROTHERHOOD OF ) <br> TEAMSTERS, JAMES P. HOFFA in his ) <br> capacity as President of the International ) <br> Brotherhood of Teamsters, ) <br> TERRANCE J. HANCOCK and WILLIAM ) <br> COOPER, in their capacities as temporary ) <br> Trustee and Assistant Trustee of Local 738, ) <br> I.B.T. ) <br> ) <br> Defendants. ) <br> ) | No. 03 C 2410 <br> Judge Joan H. Lefkow |

DOCKETED
MAY 0 5 2003

MEMORANDUM OPINION AND ORDER

Before the court is the motion of plaintiffs, Albert Massey ("Massey"), Roy Dennis ("Dennis"), Loretta Byrd ("Byrd"), Armando Fosco ("Fosco") and Teamsters Local 738 (collectively "plaintiffs"), for a temporary restraining order and/or a preliminary injunction against defendants, International Brotherhood of Teamsters ("IBT"), James P. Hoffa ("Hoffa"), in his capacity as President of the IBT, and Terrance J. Hancock ("Hancock") and William

Cooper ("Cooper"), in their capacities as temporary Trustee and Assistant Trustee of Local 738 (collectively "defendants"). This court has jurisdiction over the claim under the Labor-Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 *et seq.* For the reasons stated below, the motion is denied.

## BACKGROUND

On March 28, 2003, without any prior hearing, Hoffa appointed Hancock as temporary trustee and Cooper as assistant trustee over the affairs of Teamsters Local Union 738, thereby relieving Massey, Dennis, Byrd and Fosco of their positions on Teamsters Local 738's Executive Board.[1] Hoffa exercised this power pursuant to Article VI, Section 5(a) of the IBT International Constitution, which provides, in pertinent part,

> If the General President has or receives information which leads him to believe that any of the officers of the Local Union or other subordinate body are dishonest or incompetent, or that such organization is not being conducted in accordance with the Constitution and laws of the International Union or for the benefit of the membership, or is being conducted in such a manner as to jeopardize the interests of the International Union or its subordinate bodies, or if the General President believes that such action is necessary for the purpose of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures or preventing any action which is disruptive of, or interferes with the performance of obligations of other members or Local Unions under collective bargaining agreements, or otherwise carrying out legitimate objects of the subordinate body, he may appoint a temporary Trustee to take charge and control of the affairs of such Local Union or other subordinate body; provided, however, that before the appointment of such temporary Trustee, the General President shall set a time and place for a hearing for the purpose of determining whether such temporary Trustee shall be appointed; and further provided that where, in the judgment of the General President, an emergency situation exists within the Local Union or other subordinate body, the temporary Trustee may be appointed prior to such hearing, but such hearing shall then commence within thirty (30) days and

---

[1] Prior to being appointed Trustee over Teamsters Local 738, Hancock served as the representative of IBT in Teamsters Local 738.

2

decision made within sixty (60) days after furnishing of the transcript of testimony; and further provided that in all cases the Local Union or other subordinate body shall be advised of the reason for the appointment.

(Pl. Mot. Ex. C)

Hoffa explained the reasons for the imposition of the trusteeship over Local 738 in a Notice to officers and members of Local Union 738 dated March 28, 2003 (the "Notice"). The Notice stated that complaints had been received concerning the ability of the officers and agents of Local 738 to effectively represent the Local Union's members. Specifically, Hoffa stated that the IBT had received information indicating that,

> 1. Monthly trustees reports and other financial records for Local 738 show that the Local Union's net assets have declined from more than $2.2 million at the end of 1997 to slightly more than $764,000 at the end of February 2003, with a low of approximately $684,000 at the end of December 2001. Over the same period, the Local Union's membership has declined from approximately 4,100 to slightly more than 3,000. Many of these members have been lost as the result of the closure of the Brach's Confectionary Candy Company's Chicago facility. Of approximately 3,000 current members, 771 are listed on TITAN as employed at Brach's Candy. The Local Union has been notified that all remaining members at Brach's will be laid off by November 1, 2003.
>
> 2. Local 738 was awarded a $100,500 grant from the City of Chicago to retrain laid off Brach's Candy employees. The Local failed to segregate and account for these funds and has failed to establish or conduct any training program for the Brach's Candy employees. The funds have been deposited to the Local Union's general fund and apparently have been used to support the Local Union's routine operations.
>
> 3. The Local Union has lost members and has failed to organize any new members apparently as the result of inability to represent them and negotiate and conclude reasonable contracts. The Local Union won a representative election at a company called Metal Matic two years ago, but has yet to conclude an initial labor contract. The Local Union successfully organized a unit at Edy's Ice Cream but never obtained an initial labor contract and that unit decertified. Members in units with expiring labor contracts at Central Grocers (180 members) and Sysco Food Service (150 members) have filed petitions with the International Union complaining of distrust, incompetency, and poor representation by Local 738.

> Labor contracts expire at four other food warehouses involving almost 500 more members in March and April. Failure to negotiate good contracts at these facilities will adversely affect members represented at those facilities and employers by other Locals in the Chicago and Midwest area. Contracts will expire soon at three other facilities involving approximately 600 members.
>
> 4. On March 11, 2003, after the Local Union officers were questioned about the use of the City of Chicago grant funds, principal officer Julio Lara resigned.

(Pl. Compl. Ex. C.) The Notice also asserted that

> It further appears that an emergency situation exists because of the status of current negotiations, the contract scheduled to expire during the next several weeks, growing complaints by members about the quality of representation, and the abrupt resignation of the Local Union's principal officer.

(*Id.*)

Since the trusteeship was imposed on Teamsters Local 738, plaintiffs allege that defendants have failed and refused to bring back the plaintiffs to resume negotiating sessions. Plaintiffs allege that defendants are unaware of what they are doing and are unprepared to proceed with negotiations on behalf of Teamsters Local 738. According to plaintiffs, at the time the trusteeship was formed Teamsters Local 738 was involved in ongoing collective bargaining sessions concerning expiring contracts and was engaged in the administration of grievances for its members.

On April 9, 2003, Hoffa issued a notice that the trusteeship hearing, as required by the IBT Constitution, was to be conducted on April 22, 2003, and that all Union members were invited to attend. Just one day prior to this notice, on April 8, 2002, plaintiffs filed a "Verified Complaint to Dissolve Trusteeship" asking the court to (1) declare the trusteeship over Teamsters Local 738 in violation of Title III of the LMRDA; (2) restrain and enjoin defendants from exercising any control or supervision over the affairs of Teamsters Local 738 and order

defendants to immediately restore plaintiffs to full possession of the offices, equipment, records, funds, and all other assets and property of Teamsters Local 738; and (3) order defendants to reimburse plaintiffs for all expenditures and disbursements made by them under the trusteeship for salaries and expenses of defendants or any other officer or agent of IBT and all other improper expenditures of funds belonging to Teamsters Local 738. The plaintiffs contend that the trusteeship imposed on Teamsters Local 738 violates section 302 and 304(c) of the LMRDA,[2] and have now moved for the entry of a temporary restraining order and/or a preliminary injunction dissolving the trusteeship imposed.

On April 16, 2003, this court held a hearing on plaintiffs' motion, wherein counsel for all parties presented argument. At the conclusion of the hearing the court denied plaintiffs' motion. This opinion serves as the court's reasons for its decision.

---

[2]Section 302 of the LMRDA provides:

Trusteeships shall be established and administered by a labor organization over a subordinate body only in accordance with the constitution and bylaws of the organization which has assumed trusteeship over the subordinate body and for the purposes of correcting corruption or financial malpractice, assuring the performance of collective bargaining agreements or other duties of a bargaining representative, restoring democratic procedures, or otherwise carrying out the legitimate objects of such labor organization.

29 U.S.C. § 462.
Section 304(c) provides in pertinent part:

[A] trusteeship established by a labor organization in conformity with the procedural requirements of its constitution and bylaws and authorized or ratified after a fair hearing . . . shall be presumed valid for a period of eighteen months from the date of its establishment and shall not be subject to attack during such period except upon clear and convincing proof that the trusteeship was not established or maintained in good faith for a purpose allowable under section 462 of this title.

29 U.S.C. § 464(c).

## DISCUSSION[3]

In order to grant a motion for preliminary injunctive relief, the court must find: (1) the plaintiffs have at least a reasonable likelihood of success on the merits; (2) the plaintiffs have no adequate remedy at law and will be irreparably harmed if the injunction does not issue; (3) the threatened injury to the plaintiffs outweighs the threatened harm the injunction may inflict on the defendant; and (4) the granting of a preliminary injunction will not disserve the public interest.[4] *Adams v. Attorney Registration and Disciplinary Comm'n of Supreme Court*, 801 F.2d 968, 971 (7th Cir. 1986), citing *Fox Valley Harvestore, Inc. v. A.O. Smith Harvestore Prods. Inc.*, 545 F.2d 1096, 1097 (7th Cir. 1976); *Roland v. Air Line Employees Ass'n Int'l*, 753 F.2d 1385, 1392 (7th Cir. 1985).

When examining these factors, the court must bear in mind that plaintiffs do not wish the traditional remedy afforded by injunctive relief, that being to "preserve the *status quo*." *Roland*, 753 F.2d at 1391. Instead, plaintiffs seek dissolution of the trusteeship in its entirety, what the Seventh Circuit has referred to as "a most unique remedy." *Id.* ("In the present case, the plaintiffs ask not that the *status quo* be preserved (i.e., maintain the trusteeships), but that the trusteeships imposed . . . be dissolved."). To justify this unique remedy, plaintiffs would have to prove that IBT failed to comply with its own constitutional provisions for the emergency imposition of a trusteeship and, through clear and convincing evidence, that it acted in bad faith

---

[3] Because the present issues do not turn on credibility determinations, the court concludes that there is no need for an evidentiary hearing and the submissions of the parties provide an appropriate basis for deciding the motion.

[4] In this circuit, the standards for a temporary restraining order and a preliminary injunction are functionally identical. *See, e.g., Illusions Too Reality, LLC v. City of Harvey*, No. 02 C 7272, 2003 WL 260335, at *4 (N.D. Ill. Feb. 4, 2003); *Bernina of Am., Inc. v. Fashion Fabrics Int'l, Inc.*, No. 01 C 585, 2001 WL 128164, at *1 (N.D. Ill. Feb. 9, 2001).

6

or for an improper purpose.[5] *International Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers, and Helpers, AFL-CIO v. Local Lodge 714, Int'l Bhd. of Boilermakers, Iron Ship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO*, 845 F.2d 687, 695 (7th Cir. 1988); *International Union, Allied Indus. Workers of Am. v. Local Union No. 589*, 693 F.2d 666, 675 (7th Cir. 1982); *International Bhd. of Teamsters v. Local No. 743*, No. 94 C 5128, 1994 WL 559209, at *2 (N.D. Ill. Oct. 7, 1994).

Starting with the first factor, a reasonable likelihood of success on the merits, the court must examine whether Hoffa had "reasonable grounds to believe, and did believe in good faith, that a legitimate emergency existed . . . justifying the imposition of [a] trusteeship without a prior hearing." *Roland*, 753 F.2d 1385; *see also, International Bhd. of Teamsters v. Local Union Number 810*, 19 F.3d 786, 793 (2d Cir. 1994); *International Bhd. of Teamsters, Local Union 107 v. International Bhd. of Teamsters*, 935 F. Supp. 599, 601 (E.D. Penn. 1996). Hoffa's grounds for believing an emergency existed stemmed from the status of current collective bargaining negotiations which were set to expire in recent weeks, the complaints about the quality of representation of Local 738, and the abrupt resignation of Local 738's principal officer.

The court notes that if Hoffa had a good faith belief as to the status of the above listed events, plaintiffs would not have a reasonable likelihood of proving at trial that an emergency did not exist. If complaints about the representation of the Local Union were present when several

---

[5]At argument on this motion counsel for plaintiffs asserted that bad faith only needed to be shown by a preponderance of the evidence, citing *Chieco v. International Bhd. of Teamsters*, 983 F. Supp. 396, 400 (S.D.N.Y. 1997). In *Chieco*, however, the court used a two-tiered analysis, concluding that if an emergency was not present, bad faith needed to be shown only by a preponderance of the evidence. *Id.* Conversely, if enough evidence of an emergency was present and, therefore, the IBT complied with the requirements of its constitution, then bad faith needed to be shown by clear and convincing evidence. *Id.* As discussed more fully below, the court believes sufficient evidence is present showing the presence of an emergency, so clear and convincing proof is required.

7

collective bargaining units were set to expire, Hoffa's good faith concern about the ability of Teamsters Local 738 to adequately represent Union members would likely be enough for a emergency trusteeship to be imposed. *E.g., Roland*, 753 F.2d at 1394 ("[A]s long as [the International Union] president reasonably believed that an emergency of sufficient importance existed, he was entitled to impose [the] trusteeship."). Certainly the new contracts being negotiated is of sufficient import,[6] and the emergency nature of the defendant's actions is further supported by the fact that the Chicago "grant" was still pending and that the principal officer of the Union had resigned while these contracts were being renegotiated. Thus, the emergency nature of the President's action may be justified if, in fact, Hoffa had good faith questions about the Local Union's ability to adequately take part in and represent members of the Union in such negotiations.

The issue, therefore, becomes whether Hoffa questioned in good faith the ability of Teamsters Local 738 to adequately represent its members in the upcoming collective bargaining negotiations. Phrased more appropriately for this motion: is there a reasonable likelihood of success for plaintiffs to show by clear and convincing evidence that Hoffa made the decision to impose the emergency trusteeship in bad faith? The court believes this question must be answered in the negative. Plaintiffs present, in the form of affidavits, testimony that (1) the complaints the Notice refers to are from plaintiffs themselves complaining about former Secretary/Treasurer Steve Wienert ("Wienert") and that declining revenues resulted from Wienert; (2) the grant in the amount of $100,500 awarded from the City of Chicago, which IBT

---

[6] At oral argument, counsel for Hancock, who is currently negotiating such contracts, stated that contracts for a total of six facilities are expiring this month.

alleged to be fraudulently handled, was essentially to reimburse Local 738 for salaries and costs incurred while engaged in services to help Local 738 members formerly employed at Brach's Candy and was, therefore, properly used to support Local 738's routine operations; (3) Local 738 was able to organize new members at three companies and established an Organizing Committee; (4) any "petitions" filed with the IBT have not been heard of by Local 738, and Wienert's brother, Robert, apparently spearheaded the filing of such petitions at Sysco Food Service; (5) Julio Lara's resignation had nothing to do with any "grant funds" missing from the City of Chicago, and Lara was replaced in a timely fashion without disruption; (6) contract negotiations proceeded in an orderly manner for each expiring contract with a negotiating committee already involved in negotiations; and (7) Wienert and Hancock have a personal relationship because Hancock and Wienert's brother, Robert, have been observed socializing and that Hancock has referred to a member of Local 738's executive board in a derogatory manner. Moreover, Hancock also allegedly stated that this board member was "instrumental in getting rid of Steve [Wienert]."

The best the court can say about most of the above evidence is that it merely challenges the correctness of the actions taken by the defendants, an issue the court is not ultimately concerned with. *See Int'l Bhd. of Teamster, Local Union 107*, 935 F. Supp. at 603 ("For purposes of this proceeding, the IBT has a right to assume the entire litany of charges to be well founded. We must focus instead on the question of whether [the International Union President] acted in good faith or reasonably in determining that an emergency existed . . . ."). So long as defendants actions were at least reasonable, even if ultimately incorrect, the court will not impute bad faith. Plaintiffs contend that bad faith is established because the defendants either knew the

9

charges in the Notice were false or acted with reckless disregard of the truth at the time the Notice was issued. For example, plaintiffs maintain that defendants knew that the loss of assets during the time period mentioned in the Notice was attributable to the conduct of Wienert, who was subsequently removed after the plaintiffs filed charges with the IBT. Plaintiffs' affidavits, however, do little to establish this. All that the affidavits establish is that plaintiffs filed charges against Wienert on May 6, 2001, and that monthly trustee reports during that time period were being submitted to IBT. (Byrd. Aff. ¶ 6.) This does not establish that the loss of assets was the fault of Wienert or that the defendants were aware of as much.

Plaintiffs also maintain that the allegations concerning the "grant" were part of a deliberate mischaracterization of the program on the part of defendants. The record, however, contains no evidence of such a deliberate mischaracterization. Indeed, in her affidavit Byrd stated that Hancock "does not know or does not understand how that Project was operated" and that Hancock asked how this grant worked after he was appointed trustee. (Byrd Aff. ¶ 9.) Again, while this may illustrate an incorrectness on the part of defendants, it falls short of bad faith. There is no evidence on which to base a conclusion that it was unreasonable for the defendants, not knowing how the grant program worked, to believe that the so-called grant should not have been deposited in the Local Union's bank account. Indeed, at the hearing on this motion counsel for Hancock continued to assert the position that improprieties existed in the handling of the grant and that this grant is, in fact, pending, further supporting defendant's position that emergency action was necessary.

Plaintiffs further assert that any "complaints" by employees of Sysco are based on petitions circulated by Wienert's brother Robert. Plaintiffs point to a statement by Byrd that she

10

"had never heard about these 'petitions' before but I do personally know that Steve Wienert's brother and son are employed at Sysco Food Service . . . ." (Byrd Aff. ¶ 13.) Moreover, evidence is also presented by Charles Lloyd ("Lloyd"), the Union Steward at Sysco. According to Lloyd, Robert Wienert was involved in circulating the petitions. (Lloyd Aff. ¶ 3.) Lloyd maintains that at least some of the names on these petitions were forged and that prior to these petitions being circulated, no Local 738 member at Sysco complained to him about distrust, incompetency or poor representation by Local 738. (*Id.*) Plaintiffs believe the logical conclusion is that these complaints must have, therefore, been part of a scheme by Hancock and Steve Wienert, although, once again, plaintiffs have little evidence which in fact directly shows bad faith.

With respect to the resignation of Lara, plaintiffs maintain that this caused no disruption, but as defendants point out, Lara served as the principal officer of Teamsters Local 738, his resignation came at a time shortly before the contracts were being renegotiated, and this was second principal officer of the local to have resigned during the past two years. While plaintiffs may ultimately be correct that no disruption was caused by this resignation, their evidence, even viewed in their favor, only supports the notion that defendants were wrong, not that they acted unreasonably or in bad faith.

Finally, plaintiffs attempt to establish bad faith by presenting testimony concerning Hancock's relationship with Robert Wienert and Hancock's statements concerning a member of the executive board being instrumental in firing Steve Wienert. The court cannot say, based on this evidence alone, that bad faith existed in the implementation of the emergency trusteeship.

After a review of this evidence as a whole, the court cannot say that plaintiffs have a

11

reasonable likelihood of success to show that no reasonable grounds existed for the imposition of the emergency trusteeship. The court's role in reviewing this evidence is not to place itself in the shoes of the IBT's president in determining whether or not immediate emergency action is necessary. Instead, the court only looks to see whether any such decision by the president is reasonable and not in bad faith. The court simply cannot say the record sufficiently illustrates bad faith on the part of the defendants. Plaintiffs are able to present evidence illustrating that the decision to impose the emergency trusteeship may have been based on incorrect facts. Nonetheless, Hoffa, and Hancock as his representative, are certainly in a better position to judge whether an emergency situation exists requiring IBT intervention. Here, based on concerns IBT expressed about the ability of Local 738 to represent its members in upcoming negotiations, the IBT determined that an emergency situation did in fact exist. While plaintiffs have presented evidence to show that perhaps some of the factors relied on by the IBT were incorrect, the court does not believe the evidence is substantial enough for plaintiffs to have a reasonable degree of success to reach their high burden of showing bad faith by clear and convincing evidence. Bearing in mind the unique remedy that plaintiffs seek, the court concludes that plaintiffs' motion for a temporary restraining order and/or a preliminary injunction should be denied.

## CONCLUSION

Plaintiffs emergency motion for a restraining order and/or a preliminary injunction is denied [#2].

ENTER: *Joan H. Lefkow*
JOAN HUMPHREY LEFKOW
United States District Judge

Dated: May 1, 2003

12